UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: October 08, 2013

Mr. Walter Raymond Lawrence
Law Offices
101 Northeast Avenue
Tallmadge, OH 44278-0000

Mr. Michael J. Moran
Gibson & Lowry
P.O. Box 535
Cuyahoga Falls, OH 44221

      Re: Case No. 12-8050, *In re: Sherri Nicodemus*
           Originating Case No.:11-52963

Dear Counsel,

    Enclosed is a copy of a corrected page from the decision originally sent to you on October 7, 2013. Also enclosed is a copy of the corrected opinion.

                              Yours very truly,

                              Deborah S. Hunt, Clerk

                              Cathryn Lovely
                              Deputy Clerk

cc: Mr. Marie Randolph

Enclosures

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: SHERRI J. NICODEMUS, ) ) Debtor. ) ) _____ ) ) LAVERNE K. LOWRY, ) ) Plaintiff - Appellee, ) ) v. ) ) SHERRI J. NICODEMUS, ) ) Defendant - Appellant. ) ) | No. 12-8050 |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio
Case No. 11-52963, Adv. No. 11-05189

Submitted: August 20, 2013

Decided and Filed: October 7, 2013

Before: HUMPHREY, LLOYD, and PRESTON, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

---

ON BRIEF: Michael J. Moran, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellant. Walter R. Lawrence, Tallmadge, Ohio, for Appellee.

1

# OPINION

C. KATHRYN PRESTON, Bankruptcy Appellate Panel Judge. Sherri J. Nicodemus ("Debtor" or "Defendant") appeals the order of the bankruptcy court determining that the entire debt owed to Laverne K. Lowry ("Plaintiff") in the amount of $32,186.90 plus interest pursuant to a state court judgment, is nondischargeable under § 523(a)(2)(A). The total sum consists of $9,386.90 in damages for failure to comply with a settlement agreement and $22,800.00 in sanctions for contemptuous failure to comply with a court order. Debtor argues that only the portion resulting from breach of the settlement agreement, or $9,386.90, should be held nondischargeable. For the reasons set forth below, the Panel AFFIRMS the decision of the bankruptcy court holding that the entire debt, in the amount of $32,186.90 plus interest, is nondischargeable under § 523(a)(2)(A).

## STATEMENT OF ISSUES

There are two issues presented in this appeal. The primary issue is whether the bankruptcy court erred in determining that the $22,800.00 awarded as a sanction for contemptuous failure to comply with a court order is nondischargeable under § 523(a)(2)(A). The second issue is whether the bankruptcy court erred in denying Debtor's motion to amend or make additional findings of fact pursuant to Fed. R. Bankr. P. 7052.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A "final" order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and

leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 797, 109 S. Ct. 1494, 1497 (1989) (internal quotations and citations omitted). Determinations of dischargeability are final orders for purposes of appeal. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox),* 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp. (In re Hertzel),* 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

Dischargeability determinations are conclusions of law reviewed *de novo*. *Hogan v. George (In re George),* 485 B.R. 478 (B.A.P. 6th Cir. 2013) (table). Under a *de novo* standard of review, the appellate court determines the law at issue "independently of, and without deference to, the trial court's determination." *Palmer v. Washington Mut. Bank (In re Ritchie),* 416 B.R. 638, 641 (B.A.P. 6th Cir. 2009) (citing *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.),* 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008). However, "[t]he Panel must affirm the underlying factual determinations unless they are clearly erroneous." *Hart v. Molino (In re Molino),* 225 B.R. 904, 906 (B.A.P. 6th Cir. 1998). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (citation omitted) (internal quotation marks omitted).

The bankruptcy court's denial of Debtor's motion to amend or make additional findings of fact pursuant to Fed. R. Bankr. P. 7052 is reviewed for abuse of discretion. *Besser v. Sepanak,* 478 F. App'x. 1001 (6th Cir. 2012). Abuse of discretion exists when the court " 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.' " *Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 858 (B.A.P. 6th Cir. 1997) (citation omitted). If a trial court's decision determining dischargeability is based on the correct law and facts, the court has not abused its discretion in denying a party's motion to amend or make additional findings of fact.

3

# FACTS

On July 29, 2011, Debtor filed a voluntary petition for relief under Chapter 13 (Case No. 11-52963). In Debtor's schedules, she listed Plaintiff as the holder of an unsecured non-priority claim in the amount of $32,736.79 based on a civil judgment. On December 1, 2011, Plaintiff filed a proof of claim in the amount of $32,186.90.

Prior to the petition date, Debtor was married to Plaintiff's son, John Lowry. Plaintiff and John Lowry had an extensive collection of model trains. On April 27, 2007, John Lowry died. Following John Lowry's death, a dispute arose between Plaintiff and Debtor over the train collection. On July 18, 2007, Plaintiff filed suit against Defendant in the Portage County, Ohio, Court of Common Pleas ("Court of Common Pleas") seeking more than $25,000 in damages resulting from the Debtor's alleged conversion of the train collection, which he asserted belonged to him ("state court litigation").

On July 31, 2007, the Court of Common Pleas entered an agreed order tendered by Plaintiff and Defendant, restraining and enjoining certain actions with respect to the train collection. The order provided that Debtor was "restrained and enjoined from selling, transferring, removing, moving, encumbering, or otherwise disposing of any trains, accessories, train memorabilia, displays or other personal property associated with the train collection located at the [Defendant's] premises." Stipulations, Exh. B, Docket No. 10.[1]

In September 2007, Debtor was appointed administratrix of John Lowry's probate estate by the Portage County, Ohio, Probate Court. On November 5, 2007, a magistrate judge of the Court of Common Pleas entered another agreed order in the state court litigation directing that one Amy Richards conduct an inventory of the train collection. On July 13, 2009, following the completion of the inventory, Plaintiff and Defendant, individually and as administratrix of John Lowry's estate,

---

[1] All references to docket entries are references to the bankruptcy court's electronic case docket.

4

entered into a settlement agreement resolving the state court litigation and matters in Probate Court (the "Settlement Agreement"). The Settlement Agreement identified certain parts of the train collection as belonging to Plaintiff and required Defendant to deliver possession of those parts to Plaintiff. The remainder of the train collection was to be sold at auction and the proceeds were to be split among the parties to the Settlement Agreement. On August 5, 2009, the Court of Common Pleas entered an order dismissing the state court litigation "pursuant to separate settlement agreement entered by the parties" with prejudice. Stipulations, Exh. E, Docket No. 10. On September 23, 2009, Plaintiff filed a motion to enforce the Settlement Agreement in the Court of Common Pleas.

After Plaintiff filed his motion to enforce the Settlement Agreement, the Court of Common Pleas held hearings and entered two orders, on January 29, 2010 and February 24, 2010, both directing Defendant to comply with the terms of the Settlement Agreement to turn over certain trains and accessories to Plaintiff. The court also scheduled a consolidated hearing for April 19, 2010, on Plaintiff's Motion to Enforce the Settlement Agreement and Motion for Contempt and Attorney Fees.

On April 21, 2010, after an evidentiary hearing, the magistrate judge entered a decision, finding that:

> Defendant advanced no reasonable excuse why she had not complied with the Court's Order. Further the Defendant has not turned over all the trains and/or accessories promised to the children. For some reason Defendant has given the appearance and attitude to the Court that she feels that if complying with the Court's prior Orders is inconvenient to her, she need not comply. Defendant admitted that she did not seek to comply with the Court's Order by giving the remaining trains and/or the accessories to the Plaintiff. No items were returned from March 2, 2010 to the days of hearing, even though the Defendant could have returned those items. In fact Defendant shipped those items to the auctioneer. Her actions have been dilatory at the best and malicious at the worst.

Stipulations, Exh. I, Docket No. 10. The Court of Common Pleas ordered Defendant to comply with its prior orders and deliver to Plaintiff the trains. The magistrate's decision also stated that Defendant's failure to return the trains would result in the imposition of a penalty on Defendant of $100.00 per day, until the items were delivered to Plaintiff, and Defendant was charged with all court costs incurred by Plaintiff. *Id.*

Evidently, Defendant failed to fully comply with the multitude of orders and finally, Plaintiff moved the Court of Common Pleas for entry of a final judgment. The Court of Common Pleas entered judgment for Plaintiff and against Defendant in the amount of $32,186.90 plus interest (the "Judgment"). The Judgment provides as follows:

> IT IS THEREFORE ORDERED that Plaintiff is granted a judgment against the Defendant Sherri J. Lowry Nicodemus nka Miller, for a deficiency in the amount of funds paid to Plaintiff from the proceeds of the train collection auction, in the amount of $9,386.90, plus interest at the statutory rate of 4% per annum from the date hereof.
>
> IT IS THEREFORE ORDERED that Plaintiff is granted a judgment against the Defendant Sherri J. Lowry Nicodemus nka Miller, *for her willful contempt* of this Court's Order filed herein on October 12, 2010, *by failing to return the trains and/or accessories to Plaintiff*, in an amount of $22,800.00. Said judgment is calculated at the rate of $100.00 per day from April 19, 2010 to 12/7/10, plus interest at the statutory rate of 4% per annum from the date hereof.

Stipulations, Exh. J, Docket No. 10 (emphasis added).

After Debtor filed her petition for relief, Plaintiff filed a complaint with the bankruptcy court seeking to except from discharge the entire debt owed to him by Debtor under 11 U.S.C. § 523(a)(2)(A) and (a)(7) ("Complaint"). The parties filed a joint stipulation of facts. On May 1, 2012, an evidentiary hearing was conducted. The bankruptcy court heard testimony from Debtor and Plaintiff, received documentary evidence, and took the matter under advisement. On August 2,

2012, the bankruptcy court issued a memorandum opinion holding that the entire debt in the amount of $32,186.90 plus interest is nondischargeable under § 523(a)(2)(A).[2]

On August 13, 2012, the Debtor filed a motion to amend or make additional findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.[3] The Debtor argued that although the court set forth detailed findings of fact to support its conclusion that the $9,386.90 portion of the debt is non-dischargeable, the court did not state sufficient findings of fact to support its conclusion that the $22,800.00 entered against the Debtor due to her contempt of court was on account of the fraud. Def.'s Mot. Req. Court to Amend or Make Add'l Findings of Fact at 2, Docket No. 24. On November 29, 2012, the bankruptcy court entered an order denying Debtor's motion to amend or make additional findings of fact pursuant to Fed. R. Bankr. P. 7052.

On December 13, 2012, the Debtor filed a timely notice of appeal.

## DISCUSSION

I. Dischargeabililty under 11 U.S.C. § 523(a)(2)(A)

Section 523(A)(2)(A) of the Bankruptcy Code excepts from discharge "any debt . . . for money, property, services, or . . . credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Exceptions to discharge are narrowly construed in favor of debtors in order to promote the Bankruptcy Code's policy of providing debtors with a fresh start. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659 (1991). However, a

---

[2] At the conclusion of trial, Plaintiff conceded that the debt at issue was not payable to a government entity and therefore § 523(a)(7) was not applicable to the facts of the case. *See Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006). Plaintiff also moved the court at the close of trial to conform the Complaint to the evidence presented and find that the debt owed by Debtor is excepted from discharge pursuant to § 523(a)(6). The bankruptcy court held that the § 523(a)(6) claim was not ripe for decision because " 'resolution of the issue has no meaningful effect until and unless the debtor moves for a hardship discharge, a contingency that occurs [in] only [sic] a small percentage of Chapter 13 cases.' *In re Liescheidt*, 404 B.R. 499, 505 (Bankr. C.D. Ill. 2009)." Mem. Op., p. 2 n. 2, Docket No. 23.

[3] The motion tolled the deadline for filing a notice of appeal under Fed. R. Bankr. P. 8002(b).

7

fresh start and discharge of debts is only afforded to the " 'honest but unfortunate debtor.' " *Id.* at 287 (citation omitted). A creditor objecting to the dischargeability of a debt under § 523(a)(2)(A) bears the burden of proving by a preponderance of the evidence, that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Old Republic Title Co. of Tenn. v. Looney* (*In re Looney*), 453 B.R. 252, 259 (B.A.P. 6th Cir. 2011) (citing *Rembert v. AT & T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998)).

In this appeal, the bankruptcy court concluded that Plaintiff met his burden of proof regarding every element of § 523(a)(2)(A). Specifically, the bankruptcy court held that "[e]ither the Defendant did not intend to comply with the Settlement Agreement or she entered into it with reckless disregard to her ability to perform as promised. Either way, by entering into the Settlement Agreement, the Defendant made a material misrepresentation with intent to deceive." Mem. Op. at 9, Docket No. 23. The bankruptcy court also held that the Plaintiff justifiably relied on the Defendant's representations that she would comply with the terms of the Settlement Agreement based on the fact that the trains in dispute were last in her possession or control. Finally, the court found that the Plaintiff suffered damages as a result of his reliance on Debtor's representations and held that the entire amount, $32,186.90 plus interest, is nondischargeable. Debtor does not challenge the bankruptcy court's decision regarding the $9,386.90 portion of the debt owed to Plaintiff for failure to deliver to Plaintiff some of the trains and accessories, and a portion of the auction proceeds. Thus, the primary issue before the Panel is whether the state court's contempt sanction of $22,800 is a debt for money obtained by false pretenses, a false representation, or actual fraud and therefore nondischargeable under § 523(a)(2)(A).

8

In order to make this determination, the Panel must examine § 523(a)(2)(A) and caselaw interpreting the statute. The Supreme Court in *Cohen v. De La Cruz*, 523 U.S. 213, 118 S. Ct. 1212 (1998), provides guidance on the scope of § 523(a)(2)(A). In *Cohen*, tenants were charged rent in excess of rent control amounts and the landlord was ordered by the city to refund $31,382.50. The landlord did not comply with the city's order and filed a Chapter 7 bankruptcy case seeking to discharge the debt. The tenants filed a complaint arguing that their claim was nondischargeable under § 523(a)(2)(A). Following a trial, the bankruptcy court determined that in addition to compensatory damages, treble damages should be held nondischargeable because they arose out of the same fraudulent conduct of the landlord. The landlord appealed and the Third Circuit Court of Appeals affirmed. The Supreme Court granted certiorari and affirmed.

A critical point made by the Supreme Court in *Cohen* is that § 523(a)(2)(A) prevents discharge of "any debt" as long as the debt sought to be discharged is assessed "on account of the fraud." *Cohen*, 498 U.S. at 218; *see also Archer v. Warner*, 538 U.S. 314, 321, 123 S. Ct. 1462, 1467 (2003) (citations omitted). The Supreme Court in *Cohen* explains that the phrase "to the extent obtained by" in § 523(a)(2)(A)

> does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or . . . credit" – not "any debt" – so that the exception encompasses "any debt . . . for money, property, services, or . . . credit, to the extent [that the money, property, services, or . . . credit is] obtained by" fraud.

*Cohen*, 523 U.S. at 218. This means that as long as the debt in question arises out of the debtor's fraud, false pretenses, or false representation, the debt should be held nondischargeable under § 523(a)(2)(A).

Like the petitioner in *Cohen*, the Debtor in this appeal contends that Plaintiff is only entitled to recover "actual losses" under § 523(a)(2)(A). Appt's Br. at 10. This argument, however, contradicts the Supreme Court's broad reading of § 523(a)(2)(A), which concludes that recovery under this section of the Code is *not* limited to the value of any "money, property, services, or . . .

9

credit" fraudulently obtained by a debtor, but includes even compensatory, punitive or statutory liability.[4] *Cohen*, 523 U.S. at 216. The Court found support for its interpretation of § 523(a)(2)(A) in the history of the Bankruptcy Code's nondischargeability provision, noting in *Cohen* that originally § 523(a)(2)(A) only covered judgments sounding in fraud. *Cohen*, 523 U.S. at 221. The exception was later broadened to include all such

> "liabilities for obtaining property by false pretenses or false representations," § 5, 32 Stat. 798, language that, *a fortiori*, encompasses liability for punitive damages. See *Brown*, 442 U.S., at 138, 99 S.Ct., at 2212-2213 (interpreting the provision as prohibiting discharge of "all debts arising out of conduct specified" therein); *In re St. Laurent*, 991 F.2d, at 679 (noting "practice of holding debts for punitive damages nondischargeable" under this exception "if compensatory damages . . . were themselves nondischargeable"). And the Bankruptcy Act of 1978 enacted a "substantially similar" provision, *Brown, supra*, at 129, n. 1, 99 S.Ct., at 2208, n. 1, barring discharge of "any debt . . . for obtaining money, property, services, or . . . credit, by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (1982 ed.).

*Id.* To the Court in *Cohen*, this signaled Congress' intent *not* to limit the exception to only "the portion of debtor's liability representing a restitutionary – as opposed to compensatory or punitive – recovery for fraud . . . ." *Cohen*, 523 U.S. at 222. The *Cohen* opinion makes clear that to the extent that debts in the nature of a sanction arose from an underlying nondischargeable debt, such sanctions are also nondischargeable under § 523(a)(2)(A).

The Sixth Circuit has not directly addressed whether a contempt judgment is nondischargeable under § 523(a)(2)(A). Most cases dealing specifically with the dischargeability of contempt judgments have been decided instead under § 523(a)(6), and have uniformly held that such judgments may constitute a nondischargeable debt. *See, e.g., Musilli v Droomers (In re*

---

[4] In *Cohen*, the Supreme Court states that § 523(a) defines several categories of liabilities that are excepted from discharge, and the words "debt for" introduces many of them. " '[D]ebt for' is used throughout to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like, . . . connoting broadly *any* liability arising from the specified object." *Cohen*, 523 U.S. at 220 (emphasis added).

10

*Musilli*), 379 Fed. Appx. 494 (6th Cir. 2010) (holding that the debtors' actions that led them to be held in contempt constitute willful and malicious injury); *The Spring Works, Inc. v. Sarff* (*In re Sarff*), 242 B.R. 620 (B.A.P. 6th Cir. 2000) (state court judgment holding debtor liable both for compensatory and punitive damages, and for sanctions, was excepted from discharge); *Dentrust Dental Int'l v. Rosenberg* (*In re Rosenberg*), Bankr. No. 05-23111, Adv. No. 05-1587, 2007 WL 2156282 (Bankr. N.D. Ohio July 23, 2007) (holding that state court findings regarding debtor's violation of preliminary injunction, resulting in a $250,000 contempt sanction, satisfied the criteria for nondischargeability under § 523(a)(6)). Other circuits have reached the same conclusion under § 523(a)(6). *See, e.g., Siemer v. Nangle* (*In re Nangle*), 274 F.3d 481, 484 (8th Cir. 2001) (state court criminal contempt judgment entered against debtors prepetition for disobeying a court order was "willful," and "malicious" and thus nondischargeable under § 523(a)(6)) (citation omitted); *Williams v. Int'l Brotherhood of Elec. Workers Local 520* (*In re Williams*), 337 F.3d 504, 511-13 (5th Cir. 2003) (a contempt judgment resulting from debtor's violation of an agreed judgment was nondischargeable because the judgment "made him substantially certain that his acts would inflict injury" should he not comply with its directives).

Although there are no Sixth Circuit cases on point, cases decided after *Cohen* adhere to the Supreme Court's interpretation of the scope of § 523(a)(2)(A), holding that punitive damages are nondischargeable under § 523(a)(2)(A).[5] *See, e.g., Miller v. Grimsley* (*In re Grimsley*), 449 B.R. 602, 621 (Bankr. S.D. Ohio 2011) (citing to *Cohen*, the bankruptcy court held that in addition to actual damages, the " 'full liability traceable to the sum[,]' including any liability for items such as treble and other punitive damages, attorney's fees and costs," is also nondischargeable); *Kibler v. Winters* (*In re Winters*), 159 B.R. 789 (Bankr. E.D. Ky. 1993) (citing *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672 (11th Cir. 1993), holding that a debt for punitive damages is nondischargeable under § 523(a)(2) and (a)(6) where both compensatory and punitive damages flow from same conduct). These cases are instructive to this appeal because like contempt sanctions,

---

[5] Debtor contends that the punitive nature of contempt sanctions means that they are unrelated to the underlying fraud and therefore dischargeable. The caselaw cited above contradicts Debtor's argument.

11

punitive damages are awarded not to compensate the prevailing party, but rather are intended to punish and deter its repetition. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493, 128 S. Ct. 2605, 2621 (2008). The record in this appeal reveals that Debtor was given multiple opportunities to comply, to no avail. As a result, the contempt sanction was issued and its purpose was to force Debtor to comply and punish Debtor if she continued to ignore the court's orders.

The cases cited by Debtor are distinguishable from the instant case and therefore are inapplicable. Debtor first cites *West Coast Rentals, Inc. v. Perez (In re Perez)*, 415 B.R. 546 (Bankr. D.N.M. 2009). In *Perez*, the plaintiff had filed a complaint in state court for breach of confidentiality and non-compete provisions contained in an employment contract. The state court found that the debtor lied under oath and entered a contempt judgment against him. Unlike the contempt judgment in this appeal, the conduct (lying under oath) leading to the contempt judgment in *Perez* was completely unrelated to the underlying claims for breach of contract. Accordingly, the bankruptcy court could not conclude that the debt represented an amount obtained by false pretenses, a false representation, or actual fraud. *Perez* is also distinguishable because in that case the plaintiff could not establish all the elements necessary to sustain a claim under § 523(a)(2)(A).

In addition, Debtor relies on *Tatton v. Jahke (In re Jahke)*, Bankr. No. 05-22989, Adv. No. 05-2320, 2006 WL 4846384 (Bankr. S.D. Utah Oct. 10, 2006) and *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1 (B.A.P. 9th Cir. 2008), to support the theory that a claim for nondischargeability of a contempt judgment may not be brought under § 523(a)(2)(A). The *Jahke* and *Sabban* cases are based on facts similar to the facts in *Perez*. Therefore, the bankruptcy courts held similarly that the plaintiffs' claims under § 523(a)(2)(A) were not properly supported by the facts, and thus were discharged. Debtor's reliance on these three cases is misplaced.

II. <u>Whether the Contempt Judgment May Be Determined to "Arise out of Fraud" and thus is Nondischargeable under § 523(a)(2)(A).</u>

In reviewing the bankruptcy court's findings of fact to determine whether the contempt judgment arises out of Debtor's fraud and misrepresentations, this Panel applies the clearly erroneous

12

standard. Pursuant to the clearly erroneous standard, the Panel must give deference to the bankruptcy court as the finder of fact. *Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 225 B.R. 896, 904 (B.A.P. 6th Cir. 1998). The bankruptcy court is in the best position to assess the evidence presented. *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 297 (B.A.P. 6th Cir. 2008). The Supreme Court has explained the clearly erroneous standard:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
>
> Such deference to the trial court is necessary because the trial judge is in the best position to determine the credibility of witnesses.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75, 105 S. Ct. 1504, 1511-12 (1985).

Debtor agrees that the bankruptcy court's findings of fact as they relate to the damage award for violation of the Settlement Agreement are not clearly erroneous. The question before the Panel then becomes whether the facts leading to the contempt judgment arise out of the same conduct. Applying the policy and principles set forth in *Cohen* to the facts of this case, the Panel concludes that the entire debt stems from Debtor's fraudulent conduct and misrepresentations, and therefore is not dischargeable. First, it was established at the evidentiary hearing in the bankruptcy court that in full settlement of the state court action, Defendant agreed that certain trains would be sold and that others would be turned over to the Plaintiff. Plaintiff failed to do so in violation of the Settlement Agreement and orders of the Court of Common Pleas, resulting in the court entering a contempt judgment. Moreover, despite being given ample opportunity to turn over the Plaintiff's property after the parties entered into the Settlement Agreement, Debtor repeatedly failed to do so. Finally, Debtor failed to provide to the state court and the bankruptcy court any valid cause or excuse for not turning over the property to Plaintiff. The bankruptcy court determined that Debtor's actions were intentional, considering that the trains were in her possession and control the entire time.

13

Both judgments are based on the same conduct of the Debtor, namely: (1) Debtor's misrepresentations that she would deliver the trains as set forth in the Settlement Agreement; (2) Debtor's intent to deceive Plaintiff that she would turn over the trains; (3) Plaintiff's reliance on Debtor's misrepresentation, and (4) damages suffered by Plaintiff as a result of Debtor's repeated misrepresentations. The Judgment entered in the Court of Common Pleas regarding the $22,800 sanction specifically states that it was due to ~~Plaintiff's~~ Debtor's "willful contempt of this Court's Order . . . by failing to return the trains and/or accessories to Plaintiff." Stipulations, Exh. J, Docket No. 10. Based on a review of the bankruptcy court's findings, the applicable law, and relevant caselaw, the Panel concludes that the bankruptcy court's findings of fact are not clearly erroneous, and the contempt judgment should not be discharged.

III.  Debtor's Motion to Amend or Make Additional Findings of Fact

In light of the foregoing, Debtor's argument that the bankruptcy court erred in denying her motion to amend or make additional findings of fact has no merit. Federal Rule of Bankruptcy Procedure 7052 makes Rule 52 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Fed. R. Bankr. P. 7052. Rule 52(a)(1) states that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." *Id.* "Findings [of fact] are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 710 (6th Cir. 1999) (citation omitted). In *Orlett v. Cincinnati Microwave, Inc.*, the Sixth Circuit Court of Appeals held that

> [i]t is not necessary for the [Bankruptcy] Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

14

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (1992) (citing *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792-93 (6th Cir. 1984)). As stated, the bankruptcy court issued detailed findings of fact sufficient to support its decision. Therefore, the bankruptcy court did not abuse its discretion in denying Debtor's motion to amend or make additional findings of fact pursuant to Rule 7052.

## CONCLUSION

For the reasons stated above, the Panel AFFIRMS the decision of the bankruptcy court holding that the entire debt, in the amount of $32,186.90 plus interest, is nondischargeable.